**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JAMES E. ZALEWSKI et al.,**

                              **Plaintiffs,**              **1:10-cv-876**
                                                          **1:11-cv-1156**
                    **v.**                                **(GLS/RFT)**

**T.P. BUILDERS, INC. et al.,**

                              **Defendants.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**FOR THE PLAINTIFFS:**
Lee Palmateer Law Office LLC          LEE PALMATEER, ESQ.
90 State Street, Suite 700
Albany, NY 12207

**FOR THE DEFENDANTS:**
_T.P. Builders and Thomas Paonessa_
Schmeiser, Olsen Law Firm             ARLEN L. OLSEN, ESQ.
22 Century Hill Drive
Suite 302
Latham, NY 12110

_Cicero Building Dev., Inc_
_and Luigi Cicero_
Hoffman, Warnick Law Firm             PAUL C. RAPP, ESQ.
75 State Street - 14th Floor
Albany, NY 12207

_Roxanne K. Heller_
_and DeRaven Design & Drafting_
Heslin, Rothenberg Law Firm           ANNETTE I. KAHLER, ESQ.
5 Columbia Circle                     CAROLINE B. AHN, ESQ.
Albany, NY 12203                      SUSAN E. FARLEY, ESQ.

*V.S. Sofia Engineering, Sofia*
*Engineering, PLLC and*
*Vincenzo S. Sofia*
Sugarman, Wallace Law Firm        KEVIN R. VAN DUSER, ESQ.
211 West Jefferson Street         SAMUEL M. VULCANO, ESQ.
Syracuse, NY 13202

*Cillis Builder, Inc.*
*and Theodore Cillis III*
DeGraff, Foy Law Firm             GEORGE J. SZARY, ESQ.
90 State Street                   NICOLE ROMAN RODGERS,
Albany, NY 12207                  ESQ.

**Gary L. Sharpe**
**Chief Judge**

## <u>MEMORANDUM-DECISION AND ORDER</u>

## I.  <u>Introduction</u>

Plaintiffs James Zalewski and Draftics, Ltd. commenced this action[1]

for copyright infringement under the Copyright Act of 1976, as amended,[2]

against defendants T.P. Builders, Inc. and Thomas Paonessa (collectively

"T.P."); Roxanne K. Heller and DeRaven Design & Drafting (collectively

"DeRaven"); V.S. Sofia Engineering, Sofia Engineering, PLLC, and

Vincenzo S. Sofia (collectively "Sofia"); Cillis Builders, Inc. and Theodore

---

[1]  By Order dated March 16, 2012, Magistrate Judge Randolph F. Treece directed the parties to enter a joint stipulation consolidating case numbers 10-cv-876 and 11-cv-1156. (*See* Dkt. No. 171, 10-cv-876.)

[2]  17 U.S.C. §§ 101-1332.

Cillis III, (collectively "Cillis"); and Cicero Building Dev., Inc. and Luigi Cicero (collectively "Cicero").  (*See* 3d Am. Compl., Dkt. No. 138, 10-cv-876; Compl., Dkt. No. 1, 11-cv-1156.)[3]  Pending are T.P. and Cicero's motions for summary judgment.[4]  (*See* Dkt. Nos. 176, 177.)  For the reasons that follow, the motions are granted.

## II.  Background

### A.  Underlying Facts[5]

In the early and mid-1990s, James Zalewski, the president, sole shareholder and draftsman for Draftics, Ltd., created home designs DRA210, DRA211, DRA212, DRA216, DRA217 and DRA313.  (*See* 3d Am. Compl. ¶¶ 17, 22.)  Although Zalewski did not immediately register these designs with the United States Copyright Office, he provided T.P. with copies of them.  (*See id.* ¶¶ 23-29, 38.)  Between 1993 and 1998,

––––––––––––––––––

[3]  Docket citations refer to Case No. 10-cv-876; citations to 11-cv-1156 are noted as such.

[4]  T.P.'s motion seeks either dismissal under Fed. R. Civ. P. 12(b)(6) or summary judgment under Fed. R. Civ. P. 56.  (*See* Dkt. No. 176.)  Because T.P. filed an Answer, (*see* Dkt. No. 148), dismissal under Rule 12 is unavailable.  *See* Fed. R. Civ. P. 12(b).  As such, T.P.'s motion will be analyzed under Rule 56.

[5]  Though analyzed under Fed. R. Civ. P. 56, T.P. and Cicero's statements of material facts provide little in the way of background.  (*See* Dkt. No. 176, Attach. 29; Dkt. No. 177, Attach. 7.)  Therefore, the material facts are taken from plaintiffs' Third Amended Complaint and, unless otherwise noted, are undisputed.

3

plaintiffs claim that T.P. advertised their designs and sold several houses in accordance with them.  (*See id.* ¶ 41.)  However, in 1998, plaintiffs assert that T.P. ceased using Draftics' services, yet continued to advertise and build homes based on their drawings.  (*See id.* ¶ 42.)

Plaintiffs now allege that defendants constructed in excess of twenty homes which infringed their copyrighted designs.  (*See generally id.* ¶¶ 32-94.)  Specifically, they claim that in addition to "literal copying," the infringing homes "copy the overall form, look and feel . . ., the floor plans . . . , the elevation views . . . , the arrangement and composition of spaces and architectural features . . . , [and] the selection, coordination, and arrangement of rooms, windows, doors, closets, stairs and other interior and exterior architectural features of the copyrighted works."  (*Id.* ¶ 52.)  Moreover, plaintiffs aver that T.P. and Cicero removed copyright notices from advertisements displayed on various websites.  (*See id.* ¶¶ 95-113; Compl. ¶¶ 18-41, 11-cv-1156.)

**B.**   **The Works**

In general, plaintiffs' works depict Colonial home plans, consisting of elevation views and/or floor plans.  (*See* Dkt. No. 138, Attachs. 1-7.)  Each has been registered with the United States Copyright Office as evidenced

4

by the certificates of registration attached to the Third Amended Complaint.
(*See id.*)  According to the certificates, DRA210 was first published on
December 31, 1994 and registered on October 14, 2009, (*see id.*, Attach.
1);  DRA211 was first published on December 31, 1994 and registered on
October 14, 2009, (*see id.*, Attach. 2); DRA212 was first published on
December 31, 1994 and registered on October 14, 2009, (*see id.*, Attach.
3); DRA216 (home plan) was completed in 1996 and registered on
November 13, 2007, (*see id.*, Attach. 4); DRA216 (technical drawings) was
completed in 1996 and registered on November 13, 2007, (*see id.*, Attach.
5); DRA217 was first published on December 31, 1997 and registered on
October 14, 2009, (*see id.*, Attach. 6); and DRA313 was first published on
December 31, 1996 and registered on October 14, 2009, (*see id.*, Attach.
7).

## C.   **Procedural History**

Plaintiffs initially commenced this action in July 2010 against multiple
defendants, including the builders, realtors and homeowners of the
accused homes.  (*See* Compl., Dkt. No. 1.)  After various consultations
with Magistrate Judge Randolph F. Treece, and the filing of a Second

Amended Complaint, only T.P., Cicero, DeRaven, Sofia, Shelroc,[6] and

Cillis remained.  (*See* Dkt. Nos. 47, 51, 52, 53, 56, 61, 64, 68, 85; 2d Am.

Compl., Dkt. No. 60.)

In a Memorandum-Decision and Order dated August 6, 2011, the

court dismissed plaintiffs' Second Amended Complaint, but granted them

leave to file a Third Amended Complaint.  (*See* Dkt. No. 133.)  Plaintiffs'

elected to do so, and filed their Third Amended Complaint on September 1,

2011.  (*See* 3d Am. Compl..)  Inexplicably, plaintiffs voluntarily dismissed

Shelroc and Cicero from the action,[7] and the remaining defendants filed

dispositive motions.  (*See* Dkt. Nos. 144, 146, 149, 151, 156.)  Plaintiffs

cross-moved for partial summary judgment against T.P., Sofia and Cillis,

arguing, *inter alia*, that defendants' homes were "substantially similar."

(Dkt. Nos. 158, 159, 160.)

After reviewing the parties' submissions, the court granted Cillis,

DeRaven and Sofia's motions, holding that "plaintiffs' and defendants'

---

[6]  Joseph M. Clark, Shelroc Homes, LLC, and Capital Framing, Inc. are collectively referred to as Shelroc.

[7]  Despite the voluntary dismissal, plaintiffs commenced separate, but related actions, against Cicero and Shelroc.  *See Zalewski et al. v. Shelroc Homes, LLC et al.*, No. 11-cv-1159; *Zalewski et al. v. Cicero Builder Dev., Inc. et al.*, No. 11-cv-1156.  The case against Cicero was consolidated on March 16, 2012.  (*See* Dkt. No. 171.)

works are not substantially similar." (Dkt. No. 168 at 10.)  However, T.P.'s

motion for partial summary judgment, which did not address substantial

similarity, was denied as premature.  (*See id.* at 10-12.)  Thus, plaintiffs'

causes of action for copyright infringement of architectural works against

T.P., and unauthorized removal of copyright notices against T.P. and

Cicero, survived.  (*See* 3d Am. Compl. ¶¶ 32-113; Compl. ¶¶ 18-41, 11-cv-

1156.)

### III.  Standard of Review

The standard of review under Fed. R. Civ. P. 56 is well established

and will not be repeated here.  For a full discussion of the standard, the

court refers the parties to its decision in *Wagner v. Swarts*, No. 1:09-cv-

652, 2011 WL 5599571, at *4 (N.D.N.Y. Nov. 17, 2011).

### IV.  Discussion

To establish copyright infringement, "a plaintiff with a valid copyright

must demonstrate that: (1) the defendant has actually copied the plaintiff's

work; and (2) the copying is illegal because a substantial similarity exists

between the defendant's work and the protectible elements of plaintiff's."

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63

(2d Cir. 2010) (internal quotation marks and citation omitted).  Stated

7

another way, a plaintiff must first establish the validity of his copyright, and then, "that the defendant, without authorization, copied the protected work." *Charles W. Ross Builder, Inc. v. Olsen Fine Home Bldg., LLC*, No. 4:10cv129, 2011 WL 4590003, at *7 (E.D. Va. Sept. 29, 2011).  Evidence of access and substantial similarity will suffice where actual copying cannot be proven.  *See id.* (citing *Keeler Brass Co. v. Cont'l Brass Co.*, 862 F.2d 1063, 1065 (4th Cir. 1988)).

Relying on the court's previous decision, T.P. and Cicero argue that plaintiffs' causes of action for copyright infringement fail as a matter of law because the accused properties are not substantially similar to plaintiffs' architectural works.  (*See* Dkt. No. 176, Attach. 1 at 5-8; Dkt. No. 177, Attach. 6 at 2-6.)  In response, plaintiffs assert that the court's previous decision constituted legal error.  (*See* Dkt. No. 181 at 19-20.)  Specifically, plaintiffs take exception with the court's failure to address the originality of their works, and request that the prior decision be ignored or amended. (*See id.*)  Furthermore, they aver that there are genuine issues of material fact with respect to the question of substantial similarity, and finally, that summary judgment is premature.  (*See id.* at 13-18, 22-23.)

Addressing first the purported error in the court's previous decision,

plaintiffs challenge the accuracy and completeness of the substantial similarity analysis.  (*See id.* at 5-12, 19-20.)  While the conclusion was correct, (*see* Dkt. No. 168 at 9-10), the steps in the substantial similarity analysis were not fully articulated.  Thus, for the sake of clarity, the court exercises its discretion to amend only the reasoning in its previous decision to include the full analysis discussed below.[8]  *See Cusamano v. Sobek*, 604 F. Supp. 2d 416, 435 n.30 (N.D.N.Y. 2009).  In so doing, the court first discusses plaintiffs' claim regarding the propriety of summary judgment, followed by the availability and scope of copyright protection, and ultimately, the substantial similarity between plaintiffs' and defendants' works.

## A.   Propriety of Summary Judgment

Plaintiffs argue first that the court cannot weigh the evidence in deciding the pending motions.  (*See* Dkt. No. 181 at 13.)  They further claim that genuine issues of fact remain with respect to whether their works

_____

[8]  With the exception of one home listed in count four of the Third Amended Complaint, the instant motions require a review of the same accused properties discussed in the court's previous decision.  However, after conducting the requisite visual comparison in accordance with the substantial similarity test below, the court discerns no error in its previous holding insofar as the copyrightable elements of plaintiffs' DRA212 drawing are not substantially similar to defendants' design.  (*Compare* Dkt. No. 146, Attach. 4, *with* Dkt. No. 138, Attach. 3.) It follows that recision of the previous Memorandum-Decision and Order is unnecessary.

are substantially similar to the allegedly infringing designs.  (*See id.* at 14-17.)  Lastly, plaintiffs contend that discovery is necessary to "disclose additional as-built deviations," and to obtain further evidence to counter defendants' motions.  (*Id.* at 16-17; Dkt. No. 181, Attach. 1 ¶¶ 46-47.)  The court disagrees on all accounts.

With respect to the need for discovery, plaintiffs' previously cross-moved for summary judgment on the basis of substantial similarity.[9]  (*See* Dkt. Nos. 158, 159, 160.)  In so doing, plaintiffs implicitly represented that there were no genuine issues of material fact and they, as the moving party, were entitled judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a). It follows that their current argument regarding the need for discovery is both disingenuous and unpersuasive.

While traditionally reserved for the trier of fact, "[t]he question of substantial similarity is by no means exclusively reserved for resolution by a jury."  *Gaito Architecture*, 602 F.3d at 63.  Indeed, "it is entirely appropriate for a district court to resolve that question as a matter of law, [where] . . . 'no reasonable jury, properly instructed, could find that the two

---

[9]  Pursuant to Fed. R. Civ. P. 56(c)(3), the court exercises its discretion to "consider other materials in the record."

works are substantially similar.'"  *Id.* (quoting *Warner Bros. Inc. v. Am.*

*Broad. Cos.*, 720 F.2d 231, 240 (2d Cir. 1983)).  Because "the works

themselves supersede and control contrary descriptions of them," *Walker*

*v. Time Life Films, Inc.*, 784 F.2d 44, 52 (2d Cir. 1986), discovery is

unnecessary, where, as here, the court can conduct the requisite visual

comparison.  *Gaito Architecture*, 602 F.3d at 64.  Moreover, in the case of

architectural works—which are akin to compilations[10]—summary judgment

"is often more reliabl[e] and accurate[]."  *Intervest Constr., Inc. v.*

*Canterbury Estate Homes, Inc.*, 554 F.3d 914, 920 (11th Cir. 2008).  "This

is so because a judge is better able to separate original expression from

the non-original elements of a work where the copying of the latter is not

protectable and the copying of the former is protectable."  *Id.* at 920.

Here, the parties provided the copyrighted works, (*see* Dkt. No. 138,

Attachs. 1-7), the allegedly infringing works, (*see, e.g.*, Dkt. No. 176,

Attachs. 3-24; Dkt. No. 177, Attachs. 4-5; Dkt. No. 181, Attachs. 2-3),

images of the exteriors of the as-built homes, (*see* Dkt. No. 181, Attach. 4),

and screenshots of the relevant websites, (*see* Dkt. No. 181, Attachs. 5-

12).  Despite their contrary position in the face of T.P. and Cicero's

---

[10]  *See infra* Part IV.C.1.

motions, plaintiffs repeatedly stated that "[w]hen a court is called upon to consider whether the works are substantially similar, *only* a visual comparison of the works is required." (Dkt. No. 158, Attach. 1 at 13; Dkt. No. 159, Attach. 1 at 12; Dkt. No. 160, Attach. 1 at 10 (emphasis added)). Given the technical nature of the inquiry before it, and the comprehensive submissions by the parties, the court is not only capable of conducting the requisite visual comparison, but also better suited to do so. *See Gaito Architecture*, 602 F.3d at 64; *Intervest*, 554 F.3d at 920.

**B.   <u>Availability and Scope of Copyright Protection</u>**

Turning to the issue of originality, plaintiffs aver that T.P. and Cicero conceded that their works are original. (*See* Dkt. No. 181 at 7-8.) T.P.'s reply refutes this claim, arguing that it challenged the originality of the works in its previous motion for summary judgment. (*See* Dkt. No. 183 at 2.) Because the originality inquiry is an "indispensable step of identifying the protectable aspects of plaintiffs' designs," the court discusses it first. (Dkt. No. 181 at 5.) In so doing, it concludes that plaintiffs' home plans are entitled to, at best, thin copyright protection.

*1.     Prima Facie Evidence of Validity*

Establishing copyright infringement requires proof that the plaintiff

12

owns a valid copyright, and "'copying of constituent elements of the work that are original.'" *Boisson v. Banian, Ltd.*, 273 F.3d 262, 267 (2d Cir. 2001) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Normally, these requirements are satisfied by the certificate of copyright registration, which, if "'made before or within five years after first publication of the work'" constitutes "'prima facie evidence of the validity of the copyright . . . and of the facts stated in the certificate.'" 17 U.S.C. § 410(c). But, whereas here, the certificates were issued more than five years after the date of first publication, (*see* Dkt. No. 138, Attachs. 1-7), "[t]he evidentiary weight to be accorded [to them] . . . shall be within the discretion of the court." 17 U.S.C. § 410(c). When considered in light of "the Copyright Office's practice of summarily issuing registrations," *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 428 (4th Cir. 2010), the certificates here are, standing alone, insufficient. *See Home Design Servs., Inc. v. Starwood Constr., Inc.*, 801 F. Supp. 2d 1111, 1116-17 (D. Colo. 2011); *CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 143 (E.D.N.Y. 2011). As such, the burden remains

with plaintiffs to establish the validity and originality of their drawings.[11]  *But see CJ Prods. LLC*, 809 F. Supp. 2d at 142 (stating that where plaintiff has established a prima case of validity, "the burden to prove otherwise shifts to the defendants").

Here, the validity of the registrations is uncontested as neither T.P. nor Cicero challenges plaintiffs' compliance with, *inter alia*, 37 C.F.R. § 202.11.  Absent evidence to the contrary, the court accepts, for the purposes of these motions, that plaintiffs' registrations are valid.  However, in light of T.P.'s argument regarding the lack of originality, the court must determine whether plaintiffs' works are entitled to copyright protection.

2.    *Originality of Home Plans*

Originality is "'the *sine qua non* of copyright,'" as copyright protection only extends to the "components of a work that are original to the author." *Boisson*, 273 F.3d at 268 (quoting *Feist*, 499 U.S. at 348).  While originality is not synonymous with novelty or uniqueness, the work in question must be "independently created by its author, . . . not copied from pre-existing works, and . . . come[] from the exercise of the creative powers of the

---

[11]  Because the burden remains with plaintiffs, their argument regarding T.P. and Cicero's failure to proffer evidence to challenge the originality of the drawings in question is meritless.  (*See* Dkt. No. 181 at 7.)

author's mind."  *Id.*  Simply put, the work must be independently created, and possess "at least some minimal degree of creativity."  *Feist*, 499 U.S. at 345; *see Axelrod & Cherveny Architects, P.C. v. Winmar Homes*, No. 2:05-cv-711-ENV-ETB, 2007 WL 708798, at *9 (E.D.N.Y. Mar. 6, 2007) ("For better or worse, courts have not required an 'especially elevated' level of originality in the architectural realm.").

Here, the sole evidence[12] submitted by plaintiffs to establish originality is the affidavit of Zalewski, in which he avers that each of his works is an original, and is the byproduct of his "imagination, experience and know-how."  (Dkt. No. 181, Attach. 1 ¶ 28.)  He further claims that each floor plan and elevation view are "original in their own right," as are the "overall form, the arrangement and composition of spaces and elements, and many portions and design elements."  (*Id.*)  Notwithstanding T.P.'s attempt to cast doubt on the originality of plaintiffs' designs, (*see* Dkt. No. 183 at 2-6), the evidence submitted is insufficient to justify a finding of unoriginality.  *See Axelrod*, 2007 WL 708798, at *10 (stating that

---

[12]  Though Zalewski also contends that he needs discovery to obtain additional "evidence regarding the originality of [his] designs," (Dkt. No. 181, Attach. 1 ¶ 46(e)), his affidavits in support of his previous cross-motions for summary judgment, which are essentially identical, contained no such averment, (*see, e.g.*, 160, Attach. 3).  Again, the court is unpersuaded, as the question of copyrightability, which necessarily encompasses originality, is one of law.  *See Darden v. Peters*, 402 F. Supp. 2d 638, 641 (E.D.N.C. 2005).

"[t]he architectural work need not be novel; bluntly, the vast majority of works qualify, no matter how crude, humble, or obvious.") (internal quotation marks and citation omitted).  But, establishing prima facie originality does not automatically deem a work protected.

     *3.*    *Conceptual Nature of Plaintiffs' Home Plans*

     Clearly, unoriginal works are unprotectable. *See Boisson*, 273 F.3d at 268.   "Likewise an element within a work may be unprotectible even if other elements, or the work as a whole, warrant protection."  *Id.*  Where the material is "in the public domain," *id.*, or is merely an idea, concept or process, copyright protection—"even against intentional copying"—is unavailable.  *Attia v. Soc'y of the N.Y. Hosp.*, 201 F.3d 50, 53-54 (2d Cir. 1999); *see* 17 U.S.C. § 102(b) (codifying nonprotectible subject-matter). However, an author's expression of an idea is protected.  *See Attia*, 201 F.3d at 54.  Though no bright-line rule exists, "the inquiry often turns on the level of abstraction or generalization of the works being compared."  *Id.*

     In the realm of functional works, such as architectural drawings, distinguishing between ideas and expressions is especially challenging. *See id.* at 55.  Generally, "notions of where to place functional elements, . . . and what methods of construction and principles of engineering to rely

on" are unprotected.  *Id.*  Conversely, a designer who appropriates both

those ideas and "the author's personal expression of them" may be liable

for infringement.  *Id.*

In *Attia*, 201 F.3d at 56, the Second Circuit distinguished between

architectural drawings that were sufficiently specific to enable construction,

and those that were not.  Although the Circuit disavowed the notion that

"only final construction drawings can contain protected expression," it

characterized the following as "rough ideas of a general nature":

> The placement of a new building, the use of truss technology to transfer weight, the alignment of floor heights and corridors, the creation of a continuous traffic loop through the hospital complex, the placement of emergency services and ambulance parking along that roadway, the location of a pedestrian area and of mechanical equipment, [and] the arrangement of space on particular floors[.]

*Id.* at 56-57.  Calling the plaintiff's drawings "highly preliminary and

generalized," the Circuit held that the "allegedly copied matter consisted

only of ideas and concepts, not of protected expression."  *Id.* at 55, 57.

Here, the home plans for DRA212, DRA216a and DRA313, are best

described as sketches, not plans.  (*See* Dkt. No. 138, Attachs. 2, 4, 7.)

When compared to either T.P.'s allegedly infringing plans, (*see* Dkt. No.

176, Attachs. 3-24), or even the remainder of plaintiffs', (*see* Dkt. No. 138,

17

Attachs. 1, 3, 5-6), the conceptual nature of these drawings is readily

apparent.  Despite Zalewski's claim to the contrary, (*see* Dkt. No. 181 at 9,

Attach. 1 ¶ 31), DRA212, DRA216a and DRA313 "are barely a first step

toward the realization of a plan,"[13] *Attia*, 201 F.3d at 56, and thus, are

ineligible for copyright protection.  *See id.* at 57.  As such, plaintiffs' claims

regarding the alleged infringement of DRA212, DRA216a and DRA313 are

dismissed; the scope of protection for the remaining works must now be

delineated.

### 4.    *Scope of Copyright Protection*

"Copyright protection extends to 'original works of authorship fixed in

any tangible medium of expression.'"  *Olsen*, 2011 WL 4590003, at *9

(citing 17 U.S.C. §§ 101-122).  Following the passage of the Architectural

Works Copyright Protection Act (AWCPA), "architectural works were added

to the list of copyrightable works of authorship."  *Axelrod*, 2007 WL

708798, at *2 (citing 17 U.S.C. § 102(a)(8)); *see* 17 U.S.C. § 101 (defining

an "architectural work" as "the design of a building as embodied in any

tangible medium of expression, including a building, architectural plans, or

---

[13]  For example, the affidavit of former-defendant Cillis notes several critical elements
that are missing from DRA212.  (*See* Dkt. No. 146, Attach. 1 ¶ 6.)

drawings"). Although "the overall form as well as the arrangement and composition of spaces and elements" are included in the definition, "individual standard features, such as common windows, doors, and other staple building components," H.R. Rep. No 101-735 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6935, 6949, are explicitly excluded. 17 U.S.C. § 101; *see* 37 C.F.R. § 202.11(d)(2) (noting that "[s]tandard configurations of spaces" are noncopryrightable).

The scope of protection for architectural works is further limited by the "merger doctrine," which recognizes that certain ideas "can only be expressed in a very limited number of ways." *Home Design*, 801 F. Supp. 2d at 1118-19. Likewise, design elements that are dictated by market forces, building codes and functional demands may also be unprotected. *See id.* at 1119. In spite of the restrictions on individual design elements, Congress' inclusion of the phrase "arrangement and composition of spaces and elements" demonstrates their understanding that "creativity in architecture frequently takes the form of a selection, coordination, or arrangement of unprotectible elements into an original, protectible whole." *Intervest*, 554 F.3d at 919. Thus, irrespective of the protection accorded to the individual design elements, "the gestalt of the plans" are protected.

19

*Axelrod*, 2007 WL 708798, at *11 (internal quotation marks and citations omitted).

Relevantly, in *Olsen*, 2011 WL 4590003, at *4, the district court examined the history of Colonial architecture as a means of ascertaining design elements which were not copyrightable.  Among other factors, the court noted that features that are "essential or common to the architectural style within which the builder designed the structure in question" are unprotected.  *Id.* at *11.  In Colonial Georgian architecture, such features include:

> a style generally characterized by symmetry; aligned windows; gambrel, gabled, or hipped roofs; paneled doors accentuated by classical pilasters and a proportioned, pedimented entablature; rectangular or half-round transom lights, side lights, and elliptical fanlights; double-hung windows typically six over six; and front entrances framed by pilasters and an entablature but no covered porch supported by columns.[14]

---

[14]  Additional architectural features of this style include:

> [i]nteriors [with] central halls, elaborately turned stair balustrades, paneled walls painted in warm colours and white plaster ceilings . . .  curved interior walls, such as in staircase halls; arches on landings and passageways; ornamental Venetian windows; doorways with pilasters separating the door from side lights; and fanlight arches covering the entire doorway . . . battlemented and indented parapets; pointed casement windows with tracery in the heads, margin lights and drip moulds above them; pointed doorcases with shafts or reeding up the sides and meeting at the top in an arch; hooded or unhooded wrought-or cast-iron balconies on windows and porches; shallow, curved bays often running the full height of the building; and shallow-pitched roofs.

*Olsen*, 2011 WL 4590003, at *4 (internal quotation marks and citations omitted).

*Id.* at *4. Although the use of standard colonial features did not "render the copyrighted work unoriginal," the district court held that the "heavy incorporation of this architectural style into its design . . . substantially dampen[ed] the degree of protection to which" the plaintiff was entitled. *Id.* at *10; *accord Trek Leasing, Inc. v. United States*, 66 Fed. Cl. 8, 13 (Fed. Cl. 2005) (stating that the "hallmarks of a popular architectural style . . . are not protectable").

In the instant case, plaintiffs' Complaints make no reference to any single feature that is individually entitled to copyright protection.[15] (*See generally* 3d Am. Compl.; Compl., Dkt. No. 1, 11-cv-1156.) Regardless of the reasoning behind this omission—if it was in fact an omission[16]—the court, having examined plaintiffs' works, is unable to identify any architectural elements which, in and of themselves, are entitled to copyright protection. (*See* Dkt. No. 138, Attachs. 1-7.) That being said, the works are not without protection. Although plaintiffs were heavily

_____

[15] Zalewski's assertion that the elevation views contain "unique" features, (Dkt. No. 181, Attach. 1 ¶ 14), without identifying or describing what the features are, is insufficient to survive the heightened pleading standard for copyrights. (*See* Dkt. No. 133 at 8-11.)

[16] A careful review of plaintiffs' submissions demonstrates their understanding that only "[t]he arrangement of spaces on [their] floor plans" is copyrightable. (*See* Dkt. No. 181 at 9.)

influenced by, *inter alia*, the Colonial style of architecture, this reliance does not render their works unoriginal or unprotectable, as the requisite level of creativity here lies in the combination and arrangements of otherwise unprotected features.  *See Olsen*, 2011 WL 4590003, at *10. Accordingly, the court concludes that the scope of the copyright protection in this case is limited to the way in which plaintiffs selected, coordinated and arranged "unprotectible [sic] elements into an original, protectible [sic] whole."[17]  *Intervest*, 554 F.3d at 919 (internal quotation marks and citation omitted).  It follows that the substantial similarity analysis remains the dispositive inquiry.

**C.    Substantial Similarity Analysis**

At its core, this case hinges on a determination of substantial similarity.  To prove unauthorized copying, plaintiffs "must establish 'substantial similarity'" by showing: "(I) that it was protected expression in the earlier work that was copied and (ii) that the amount that was copied is 'more than de minimis.'" *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein*

---

[17]  Even if a subsequent court finds that DRA212, DRA216a and DRA313 are copyrightable, they too are only entitled to limited copyright protection, and the lack of substantial similarity between these works and the accused properties, as analyzed below, provides an alternative basis for summary judgment.

*Moomjy, Inc.*, 338 F.3d 127, 131 (2d Cir. 2003) (quoting *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 137-38 (2d Cir. 1998)). Though the parties agree that this inquiry is dispositive, their submissions evidence conflicting views on how the test should be applied, what images should be considered, and ultimately, whether the works in question are substantially similar. The court addresses each of these arguments in turn.

   *1.     Substantial Similarity in the Context of Architectural Works*

   To determine whether two works are substantially similar, courts normally apply the "ordinary observer test," which asks "whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same." *Gaito Architecture*, 602 F.3d at 66 (internal quotation marks and citation omitted)). This test, however, concerns only those elements which are entitled to copyright protection. *See Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995). Necessarily then, a more discerning analysis—*i.e.*, one focused on solely the protectible elements—is required for works that contain both protected and unprotected features. *See Gaito Architecture*, 602 F.3d at 66. Yet, infringement encompasses more than

just literal copying.  *See id.*  Where the alleged infringer has

misappropriated the original way in which the author has selected,

coordinated, and arranged the elements of his or her work," this too

constitutes unauthorized copying.  *Id.* (internal quotation marks and

citations omitted).

Notably, several courts have analogized architectural works to

compilations.  *See Intervest*, 554 F.3d at 919; *Olsen*, 2011 WL 4590003, at

*10; *Home Design*, 801 F. Supp. 2d at 1118.  This analogy may not always

be appropriate, particularly with respect to individual elements that are,

standing alone, protectable.  However, in this case—where the only

copyrightable feature of plaintiffs' works is the selection, coordination and

arrangement of unprotected elements—consideration of the protection

afforded to compilations is instructive.

In *Intervest*, the Eleventh Circuit highlighted that, in defining

architectural works, Congress paralleled the definition of a "compilation" by

including the phrase "'the arrangement and composition of spaces and

elements in the design.'"  554 F.3d at 919 (quoting 17 U.S.C. § 101

(defining a "compilation" as "a work formed by the collection and

assembling of preexisting materials or of data that are selected,

24

coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship")).  Since only the "architect's original combination or arrangement" of uncopyrighted features deserved protection, the court labeled the work in question a compilation and applied "thin" copyright protection.  *Id.* (internal quotation marks and citation omitted); *accord Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1225 (11th Cir. 2008)).

Building on the Second Circuit's guidance with respect to the need to compare the "total concept and overall feel" of the works, *Gaito Architecture*, 602 F.3d at 66 (internal quotation marks and citations omitted), the court agrees that an architectural work, whose entitlement to copyright protection is grounded exclusively in the arrangement and composition of unprotected elements, is legally indistinguishable from a compilation.  Admittedly, this approach places a heavier burden on plaintiffs.  *See* 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03[A][4] (Matthew Bender, Rev. Ed.) (hereinafter "Nimmer") (noting that "if substantial similarity is the normal measure required to demonstrate infringement, 'supersubstantial' similarity must pertain when dealing with works subject to only 'thin protection'").  Though this elevated burden "may

seem unfair," such is the constitutionally rooted "essence of copyright," the

primary purpose of which is to promote progress, not reward labor.  *Feist*,

499 U.S. at 349 (internal quotation marks and citation omitted).  Therefore,

in this case, the narrow scope of protectable expression necessitates that

plaintiffs show something akin to "near identity" between the works in

question to prevail.  *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*,

843 F.2d 600, 606 (1st Cir. 1988) (internal quotation marks and citation

omitted); *see Feist*, 499 U.S. at 349 (requiring the "same selection and

arrangement" to demonstrate infringement of a compilation); *see also*

Nimmer § 13.03[A][4] ("More similarity is required when less protectable

matter is at issue."); *cf. Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d

1435, 1439 (9th Cir. 1994) (holding that "the appropriate standard for illicit

copying [of works comprised of only unprotectable or licensed elements] is

virtual identity").

Here, none of the parties' submissions provide an in-depth analysis

of the substantial similarity test.  (*See generally* Dkt. Nos. 176, Attach. 1;

Dkt. No. 177, Attach. 6; Dkt. No. 181.)  Nevertheless, plaintiffs raise a

noteworthy point in their response with respect to the relevance of the

dissimilarities between the works.  (*See* Dkt. No. 181 at 18.)  Specifically,

26

plaintiffs argue that defendants' recitation of differences[18] is irrelevant as the similarity between the works controls.  (*See id.*)

In general, plaintiffs are correct: "it is 'entirely immaterial that, in many respects, plaintiff's and defendants' works are dissimilar, if in other respects, similarity as to a substantial element of plaintiff's work can be shown.'" *Attia*, 201 F.3d at 57-58 (quoting Nimmer § 13.03[B]).  But, unlike plaintiffs, (*see* Dkt. No. 181 at 18), the *Attia* court did not stop with that statement; in fact, the very next sentence states: "Nonetheless, dissimilarity can be important in determining whether there is substantial similarity."  *Attia*, 201 F.3d at 58; *see Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 913 (2d Cir. 1980) (recognizing "that numerous differences tend to undercut substantial similarity"); *Concrete Mach.*, 843 F.2d at 608 (stating that "when the points of dissimilarity not only exceed the points of similarity, but indicate that the remaining points of similarity are . . . of minimal importance . . . no infringement results") (internal quotation marks and citations omitted)); *accord Dream Custom Homes, Inc. v. Modern Day*

---

[18]  In support of their respective motions, both T.P. and Cicero provided the court with a recitation of the differences between the accused works and plaintiffs' home plans.  (*See* Dkt. No. 176, Attachs. 3-28; Dkt. No. 177, Attach. 6 at 4-6.)  These, along with the affidavits previously provided by DeRaven and Sofia, (*see* Dkt. No. 149, Attach. 5-14; Dkt. No. 156, Attach. 1 ¶¶ 12-276), articulate numerous differences between plaintiffs' and defendants' works.

*Constr., Inc.*, 773 F. Supp. 2d 1288, 1308 (M.D. Fla. 2011).  Despite

plaintiffs' selective citation to Circuit precedent, in this case, where the

works are "dissimilar in the very respects in which [they are] claimed to be

similar," the dissimilarities "obviously influence the conclusion as to

whether the claimed similarity in fact exists or is substantial."  *Attia*, 201

F.3d at 58.

In sum, due to the limited scope of protectable expression in

plaintiffs' works, the protection afforded is thin, *see Feist*, 499 U.S. at 349,

and a showing of near identity is required to prevail, *see Concrete Mach.*,

843 F.2d at 606.

2.    *Use of Mirror Images in Visual Comparison*

Before conducting the requisite visual comparisons, the court must

address the propriety of using mirror images of plaintiffs' works in

determining substantial similarity.  This issue arose after plaintiffs included

side-by-side comparisons of both the copyrighted works, and mirror images

of the elevation views and floor plans in their response.  (*See* Dkt. No. 181,

Attachs. 2-3.)  Plaintiffs contend, albeit without citation to any authority

whatsoever, that the "mirror image[s] are one-in-the-same" as the original

design.  (Dkt. No. 181 at 13; *see* Dkt. No. 181, Attach. 1 ¶ 39.)  In spite of

T.P. and Cicero's failure to address this point in their replies, (*see generally* Dkt. Nos. 182, 183), all parties[19] were permitted to file supplemental briefs addressing this issue.  (*See* Dkt. No. 184 at 3.)

After reviewing the parties' submissions, the court concludes that there is no bright-line rule on the use or relevance of mirror images.  (*See generally* Dkt. Nos. 186-189.)  Moreover, given the facts of this case, the court deems it inappropriate to pronounce one.  Though the court is unwilling to endorse plaintiffs' unsubstantiated assertion that the "mirror image[s] are one-in-the-same" as the original design, (Dkt. No. 181 at 13), the images are, in the context of this case, at least worthy of consideration.

### 3.   Comparison of the Works in Question

The parties' views on the issue of substantial similarity is obvious. Plaintiffs contend that the "infringing homes copy . . . the floor plans[,] . . . the elevation views[,] . . . the arrangement and composition of spaces and architectural features[,] . . . the selection, coordination, and arrangement of rooms, windows, doors, closets, stairs and other interior and exterior architectural features . . ., and include literal copying of substantial portions

---

[19] Given that plaintiffs asked the court to amend its previous ruling, (*see* Dkt. No. 181 at 19), DeRaven, Sofia and Cillis were also permitted to file supplemental briefs.  (*See* Dkt. No. 184 at 3-4.)

of the copyrighted works." (3d Am. Compl. ¶¶ 52, 80, 104, 131; Compl. ¶ 27, Dkt. No. 1, 11-cv-1156.)   Quite simply, T.P. and Cicero disagree.  So too does the court.

To aide in the substantial similarity analysis, the court received, among other things, affidavits from both plaintiffs and defendants discussing the similarities and differences in the competing works.  (*See* Dkt. No. 181, Attach. 1; Dkt. No. 176, Attach. 2-28; *see also* Dkt. No. 149, Attach. 5-14; Dkt. No. 156, Attach. 1 ¶¶ 12-276.)  Most importantly though, copies of all of the works in question, including exterior pictures of the as-built homes[20] and the allegedly infringing advertisements, were submitted. (*See* Dkt. No. 138, Attachs. 1-7; Dkt. No. 176, Attachs. 3-28; Dkt. No. 177, Attachs. 4-5; Dkt. No. 181, Attachs. 2-12.)  Using these images, which "supersede and control contrary descriptions of them," *Walker*, 784 F.2d at 52, and the court's "good eyes and common sense," *Hamil Am., Inc. v. GFI*, 193 F.3d 92, 102 (2d Cir. 1999) (alteration omitted), the following visual comparisons were conducted:

---

[20]  Although the court appreciates that it is dealing with architectural works, it is unpersuaded that additional discovery is needed to analyze the as-built homes.  (*See* Dkt. No. 181 at 17.)  Among other reasons, it is illogical to compare plaintiffs' two-dimensional designs to anything other than defendants' two-dimensional drawings.  Zalewski himself even acknowledges that it is possible to perceive a three-dimensional house from its two-dimensional drawing.  (*See* Dkt. No. 181, Attach. 1 ¶ 2.)

(1) with respect to 37 Jo Ann Court, (*see* 3d Am. Compl. ¶¶ 46(a), 50), the court compared plaintiffs' home plan, (*see* Dkt. No. 138, Attach. 6), to the plans for defendants' home, (*see* Dkt. No. 176, Attach. 10), the side-by-side comparisons submitted by plaintiffs, (*see* Dkt. No. 181, Attach. 3 at 62-64), and to the image of the exterior of the as-built home, (*see* Dkt. No. 181, Attach. 4 at 22);

(2) with respect to 10 Peachtree Lane, (*see* 3d Am. Compl. ¶¶ 46(b), 50), the court compared plaintiffs' home plan, (*see* Dkt. No. 138, Attach. 6), to the plans for defendants' home, (*see* Dkt. No. 176, Attach. 11), the side-by-side comparisons submitted by plaintiffs, (*see* Dkt. No. 181, Attach. 3 at 53-55), and to the image of the exterior of the as-built home, (*see* Dkt. No. 181, Attach. 4 at 19);

(3) with respect to 6 Peachtree Lane, (*see* 3d Am. Compl. ¶¶ 46(c), 49), the court compared plaintiffs' home plan, (*see* Dkt. No. 138, Attach. 2), to the plans for defendants' home, (*see* Dkt. No. 176, Attach. 7), the side-by-side comparisons submitted by plaintiffs, (*see* Dkt. No. 181, Attach. 3 at 44-46), and to the image of the exterior of the as-built home, (*see* Dkt. No. 181, Attach. 4 at 16);

(4) with respect to 1 Peachtree Lane, (*see* 3d Am. Compl. ¶¶ 46(d), 49), the court compared plaintiffs' home plan, (*see* Dkt. No. 138, Attach. 2), to the plans for defendants' home, (*see* Dkt. No. 176, Attach. 6), the side-by-side comparisons submitted by plaintiffs, (*see* Dkt. No. 181, Attach. 3 at 41-43), and to the image of the exterior of the as-built home, (*see* Dkt. No. 181, Attach. 4 at 15);

(5) with respect to 5 Peachtree Lane, (*see* 3d Am. Compl. ¶¶ 46(e), 51), the court compared plaintiffs' home plan, (*see* Dkt. No. 138, Attach. 7), to the plans for defendants' home, (*see* Dkt. No. 176, Attach. 12), the side-by-side comparisons submitted by plaintiffs, (*see* Dkt. No. 181, Attach. 3 at 50-52), and to the image of the exterior of the as-built home, (*see* Dkt. No. 181, Attach. 4 at 18);

(6) with respect to 16 Peachtree Lane, (*see* 3d Am. Compl. ¶¶ 46(f), 49), the court compared plaintiffs' home plan, (*see* Dkt. No. 138,

Attach. 2), to the plans for defendants' home, (*see* Dkt. No. 176, Attach. 8), the side-by-side comparisons submitted by plaintiffs, (*see* Dkt. No. 181, Attach. 3 at 47-49), and to the image of the exterior of the as-built home, (*see* Dkt. No. 181, Attach. 4 at 17);

(7) with respect to 14 Peachtree Lane, (*see* 3d Am. Compl. ¶¶ 46(g), 48), the court compared plaintiffs' home plan, (*see* Dkt. No. 138, Attach. 1), to the plans for defendants' home, (*see* Dkt. No. 176, Attach. 4), the side-by-side comparisons submitted by plaintiffs, (*see* Dkt. No. 181, Attach. 3 at 56-58), and to the image of the exterior of the as-built home, (*see* Dkt. No. 181, Attach. 4 at 20);

(8) with respect to 35 Jo Ann Court, (*see* 3d Am. Compl. ¶¶ 46(h), 48), the court compared plaintiffs' home plan, (*see* Dkt. No. 138, Attach. 1), to the plans for defendants' home, (*see* Dkt. No. 176, Attach. 3), the side-by-side comparisons submitted by plaintiffs, (*see* Dkt. No. 181, Attach. 3 at 59-61), and to the image of the exterior of the as-built home, (*see* Dkt. No. 181, Attach. 4 at 21);

(9) with respect to 24 Arch Avenue, (*see* 3d Am. Compl. ¶¶ 46(I), 50), the court compared plaintiffs' home plan, (*see* Dkt. No. 138, Attach. 6), to the plans for defendants' home, (*see* Dkt. No. 176, Attach. 9), the side-by-side comparisons submitted by plaintiffs, (*see* Dkt. No. 181, Attach. 2 at 35-37), and to the image of the exterior of the as-built home, (*see* Dkt. No. 181, Attach. 4 at 13);

(10) with respect to 23 Thoroughbred Circle, (*see* 3d Am. Compl. ¶¶ 46(j), 48), the court compared plaintiffs' home plan, (*see* Dkt. No. 138, Attach. 1), to the plans for defendants' home, (*see* Dkt. No. 176, Attach. 5), the side-by-side comparisons submitted by plaintiffs, (*see* Dkt. No. 181, Attach. 3 at 65-67), and to the image of the exterior of the as-built home, (*see* Dkt. No. 181, Attach. 4 at 23);

(11) with respect to 23 Timber Lane, (*see* 3d Am. Compl. ¶¶ 77(a), 79), the court compared plaintiffs' home plan, (*see* Dkt. No. 138, Attach. 6), to the plans for defendants' home, (*see* Dkt. No. 176, Attach. 13), the side-by-side comparisons submitted by plaintiffs,

(see Dkt. No. 181, Attach. 2 at 8-10), and to the image of the exterior of the as-built home, (see Dkt. No. 181, Attach. 4 at 4);

(12) with respect to 20 Timber Lane, (see 3d Am. Compl. ¶¶ 77(b), 79), the court compared plaintiffs' home plan, (see Dkt. No. 138, Attach. 6), to the plans for defendants' home, (see Dkt. No. 176, Attach. 14), the side-by-side comparisons submitted by plaintiffs, (see Dkt. No. 181, Attach. 2 at 6-7; Dkt. No. 185, Attach. 1 at 1), and to the image of the exterior of the as-built home, (see Dkt. No. 181, Attach. 4 at 3);

(13) with respect to 24 Timber Lane, (see 3d Am. Compl. ¶¶ 77(c), 79), the court compared plaintiffs' home plan, (see Dkt. No. 138, Attach. 6), to the plans for defendants' home, (see Dkt. No. 176, Attach. 15), the side-by-side comparisons submitted by plaintiffs, (see Dkt. No. 181, Attach. 2 at 11-13), and to the image of the exterior of the as-built home, (see Dkt. No. 181, Attach. 4 at 5);

(14) with respect to 57 Henderson Road, (see 3d Am. Compl. ¶¶ 77(d), 79), the court compared plaintiffs' home plan, (see Dkt. No. 138, Attach. 6), to the plans for defendants' home, (see Dkt. No. 176, Attach. 16), the side-by-side comparisons submitted by plaintiffs, (see Dkt. No. 181, Attach. 2 at 26-28), and to the image of the exterior of the as-built home, (see Dkt. No. 181, Attach. 4 at 10);

(15) with respect to 71 Patterson Drive, (see 3d Am. Compl. ¶¶ 77(e), 79), the court compared plaintiffs' home plan, (see Dkt. No. 138, Attach. 6), to the plans for defendants' home, (see Dkt. No. 176, Attach. 17), the side-by-side comparisons submitted by plaintiffs, (see Dkt. No. 181, Attach. 2 at 23-25), and to the image of the exterior of the as-built home, (see Dkt. No. 181, Attach. 4 at 9);

(16) with respect to 42 Patterson Drive, (see 3d Am. Compl. ¶¶ 77(f), 79), the court compared plaintiffs' home plan, (see Dkt. No. 138, Attach. 6), to the plans for defendants' home, (see Dkt. No. 176, Attach. 18), the side-by-side comparisons submitted by plaintiffs, (see Dkt. No. 181, Attach. 2 at 17-19), and to the image of the

exterior of the as-built home, (*see* Dkt. No. 181, Attach. 4 at 7);

(17) with respect to 30 Timber Lane, (*see* 3d Am. Compl. ¶¶ 77(g), 79), the court compared plaintiffs' home plan, (*see* Dkt. No. 138, Attach. 6), to the plans for defendants' home, (*see* Dkt. No. 176, Attach. 19), the side-by-side comparisons submitted by plaintiffs, (*see* Dkt. No. 181, Attach. 2 at 14-16), and to the image of the exterior of the as-built home, (*see* Dkt. No. 181, Attach. 4 at 6);

(18) with respect to 73 Hendersen Road, (*see* 3d Am. Compl. ¶¶ 77(h), 79), the court compared plaintiffs' home plan, (*see* Dkt. No. 138, Attach. 6), to the plans for defendants' home, (*see* Dkt. No. 176, Attach. 20), the side-by-side comparisons submitted by plaintiffs, (*see* Dkt. No. 181, Attach. 2 at 29-31), and to the image of the exterior of the as-built home, (*see* Dkt. No. 181, Attach. 4 at 11);

(19) with respect to 564 Snyders Lake Road, (*see* 3d Am. Compl. ¶¶ 77(I), 79), the court compared plaintiffs' home plan, (*see* Dkt. No. 138, Attach. 6), to the plans for defendants' home, (*see* Dkt. No. 176, Attach. 21), the side-by-side comparisons submitted by plaintiffs, (*see* Dkt. No. 181, Attach. 3 at 38-40), and to the image of the exterior of the as-built home, (*see* Dkt. No. 181, Attach. 4 at 14);

(20) with respect to 45 Patterson Drive, (*see* 3d Am. Compl. ¶¶ 77(j), 79), the court compared plaintiffs' home plan, (*see* Dkt. No. 138, Attach. 6), to the plans for defendants' home, (*see* Dkt. No. 176, Attach. 22), the side-by-side comparisons submitted by plaintiffs, (*see* Dkt. No. 181, Attach. 2 at 20-22), and to the image of the exterior of the as-built home, (*see* Dkt. No. 181, Attach. 4 at 8);

(21) with respect to 19 Timber Lane, (*see* 3d Am. Compl. ¶¶ 77(k), 79), the court compared plaintiffs' home plan, (*see* Dkt. No. 138, Attach. 6), to the plans for defendants' home, (*see* Dkt. No. 176, Attach. 23), the side-by-side comparisons submitted by plaintiffs, (*see* Dkt. No. 181, Attach. 2 at 2-4), and to the image of the exterior of the as-built home, (*see* Dkt. No. 181, Attach. 4 at 2);

(22) with respect to 14 Dominco Drive, (*see* 3d Am. Compl. ¶¶ 77(l), 79), the court compared plaintiffs' home plan, (*see* Dkt. No. 138, Attach. 6), to the plans for defendants' home, (*see* Dkt. No. 176, Attach. 24), the side-by-side comparisons submitted by plaintiffs, (*see* Dkt. No. 181, Attach. 2 at 33-34; Dkt. No. 185, Attach. 1 at 2), and to the image of the exterior of the as-built home, (*see* Dkt. No. 181, Attach. 4 at 12);

(23) with respect to 9 Kaleen Drive, (*see* Compl. ¶ 25, Dkt. No. 1, 11-cv-1156), the court compared plaintiffs' home plan, (*see* Dkt. No. 138, Attach. 2), to the the side-by-side comparisons submitted by plaintiffs, (*see* Dkt. No. 181, Attach. 3 at 68-70), and to the image of the exterior of the as-built home, (*see* Dkt. No. 181, Attach. 4 at 24);

(24) with respect to allegedly infringing advertisements by T.P. of DRA210, (*see* 3d Am. Compl. ¶ 99), the court compared plaintiffs' home plan, (*see* Dkt. No. 138, Attach. 1), to the images they submitted of the advertisements, (*see* Dkt. No. 181, Attach. 5);

(25) with respect to allegedly infringing advertisements by T.P. of DRA211, including the model named "Tallahassee," (*see* 3d Am. Compl. ¶¶ 99, 102), the court compared plaintiffs' home plan, (*see* Dkt. No. 138, Attach. 2), to the images they submitted of the advertisements, (*see* Dkt. No. 181, Attach. 6); and defendants' screenshots, (*see* Dkt. No. 176, Attach. 25);

(26) with respect to allegedly infringing advertisements by T.P. of DRA216, including the model named "Savannah," (*see* 3d Am. Compl. ¶¶ 99, 102), the court compared plaintiffs' home plan, (*see* Dkt. No. 138, Attachs. 4-5), to the images they submitted of the advertisements, (*see* Dkt. No. 181, Attach. 8); and defendants' screenshots, (*see* Dkt. No. 176, Attach. 28);

(27) with respect to allegedly infringing advertisements by T.P. of DRA217, including the models named "Mackenzie" and "Monroe," (*see* 3d Am. Compl. ¶¶ 99, 102), the court compared plaintiffs' home plan, (*see* Dkt. No. 138, Attach. 6), to the images they submitted of

the advertisements, (*see* Dkt. No. 181, Attach. 9); and defendants' screenshots, (*see* Dkt. No. 176, Attachs. 26-27);

(28) with respect to allegedly infringing advertisements by T.P. of DRA313,[21] (*see* 3d Am. Compl. ¶ 99), the court compared plaintiffs' home plan, (*see* Dkt. No. 138, Attach. 7), to the images they submitted of the advertisements, (*see* Dkt. No. 181, Attach. 10);

(29) with respect to allegedly infringing advertisements by Cicero of DRA211, (*see* Compl. ¶¶ 28-31, Dkt. No. 1, 11-cv-1156), the court compared plaintiffs' home plan, (*see* Dkt. No. 138, Attach. 2), to the images they submitted of the advertisements, (*see* Dkt. No. 181, Attach. 11); and defendants' exhibits, (*see* Dkt. No. 177, Attach. 4); and

(30) with respect to allegedly infringing advertisements by Cicero of DRA217, (*see* Compl. ¶¶ 28-31, Dkt. No. 1, 11-cv-1156), the court compared plaintiffs' home plan, (*see* Dkt. No. 138, Attach. 6), to the images they submitted of the advertisements, (*see* Dkt. No. 181, Attach. 12); and defendants' exhibits, (*see* Dkt. No. 177, Attach. 5).

Notably, the court observed, among other distinctions, the differences in:

room dimensions and shapes; the overall square footage of the homes;

window and door placements; the types of doors and windows; the use of

keystones and pediments; the pitch and size of the roofs; the garage door

frames; the layout of the rooms; the locations and shapes of various

fixtures; the shapes of the staircases; the dimension and design of the

---

[21] Plaintiffs' exhibit appears to include a typographical error in that it includes alleged infringements of DRA316. (*See* Dkt. No. 181, Attach. 10.) However, DRA316 is not a part of this action, and thus, the court assumes that the exhibit shows the purported infringements of DRA313. (*See* 3d Am. Compl. ¶ 99.)

walls; and the inclusion of chimneys, gables, stoops, columns and porches.

Notwithstanding the multitude of differences between the works, the court's comparison revealed some common features. However, the overwhelming majority of the similarities can be attributed to the fact that both plaintiffs' and defendants' works are heavily influenced by, and incorporate hallmark features of, Colonial architecture. *See Olsen*, 2011 WL 4590003, at *4. Likewise, both sets of works include "standard option[s]," (Dkt. No. 181, Attach. 1 ¶ 18), which are also unprotected. Any remaining similarities, of which there are few, are *de minimus* in light of the vast dissimilarities between the works.[22] *See Oravec*, 527 F.3d at 1227.

In sum, the overwhelming number of dissimilarities, especially with respect to the elements plaintiffs claim are similar, *see Attia*, 201 F.3d at 58, "not only exceed the points of similarity," *Concrete Mach.*, 843 F.2d at 608 (internal quotations marks and citation omitted), but also "preclude a finding of substantial similarity," *Oravec*, 527 F.3d at 1227. As such, the court concludes that "no reasonable jury, properly instructed, could find"

---

[22] This includes plaintiffs' claim that although the entire design was not copied in the accused home, individual floor plans or elevation views were. Because the substantial similarity analysis here concerns the "total concept and overall feel" of plaintiffs' works, *Tufenkian*, 338 F.3d at 133, it is insufficient to demonstrate that a single component of the design, such as an individual floor plan or elevation view, has been copied.

that plaintiffs' and defendants' works are substantially, let alone

supersubstantially, similar.  *Gaito Architecture*, 602 F.3d at 63; *see Olsen*,

2011 WL 4590003, at *15.  Because plaintiffs cannot establish one of the

requisite elements of their copyright infringement claims, their causes of

action against all defendants are unsustainable.[23]   It follows that T.P. and

Cicero's motions for summary judgment are granted.

**D.**   **Plaintiffs' Claim of Wholesale Copying**

In their response, plaintiffs contend that T.P. provided copies of their

works to "former defendants Roxanne Heller and Vincenzo Sofia so that

they could prepare the [allegedly] infringing drawings."  (Dkt. No. 181 at

18.)  Relying on Heller's affidavit, plaintiffs claim that this act of wholesale

copying, standing alone, constitutes copyright infringement in that it

deprived them of their exclusive right "to distribute copies of the

copyrighted work to the public."  (*Id.*)  While this may be true, *see* 17

U.S.C. § 106, this specific claim is not clearly pled in any of plaintiffs'

complaints.  *See* Fed. R. Civ. P. 8(a); *see also Bell Atl. Corp. v. Twombly*,

---

[23]  Because plaintiffs' and defendants' works are not, as a matter of law, substantially similar, any similarities between plaintiffs' works and the allegedly infringing advertisements exist at the level of unprotected expression, and thus, are insufficient to support a claim under the Digital Millennium Copyright Act.  *See* 17 U.S.C. § 1202(b); *Olsen*, 2011 WL 4590003, at *15.

550 U.S. 544, 555 (2007) (stating that under Rule 8, "the defendant [must be given] fair notice of what the . . . claim is and the grounds upon which it rests" (internal quotation marks and citation omitted)).  Thus, to the extent plaintiffs sought to state a claim for wholesale copying against defendants, that claim is also dismissed.

Notwithstanding this dismissal, it would be unjust to foreclose plaintiffs' rights to pursue this claim.[24]  Equally unjust, though, would be a procedural posture that precluded defendants from attacking the allegations prior to engaging in discovery.  Therefore, plaintiffs may, if they so choose, file a Fourth Amended Complaint within thirty (30) days of the date of this Memorandum-Decision and Order, limited to the issue of wholesale copying of their works, that complies with the requirements of, *inter alia*, N.D.N.Y. L.R. 7.1(a)(4).  If plaintiffs elect to do so, any defendant(s) named in that complaint shall be entitled to all of rights afforded to them under the Local Rules of Practice and Federal Rules of Civil Procedure.

## V.  **Conclusion**

---

[24]  The court presumes, without deciding, that plaintiffs can allege all of the facts necessary to support such a claim and that the claim would be timely.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that plaintiffs' letter motion regarding the submission of errata sheets (Dkt. No. 185) is **GRANTED**; and it is further

**ORDERED** that T.P. and Cicero's motions for summary judgment (Dkt. Nos. 176, 177) are **GRANTED** and all claims against them are **DISMISSED**; and it is further

**ORDERED** that plaintiffs may, if they so choose, file a Fourth Amended Complaint within thirty (30) days of the date of this Memorandum-Decision and Order, limited to the issue of wholesale copying of their works, that complies with the requirements of, *inter alia*, N.D.N.Y. L.R. 7.1(a)(4); and it is further

**ORDERED** that, if plaintiffs do not file a Fourth Amended Complaint within thirty (30) days of this order, the Clerk is directed to enter judgment for defendants and close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

June 18, 2012
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court

40