**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JAMES E. ZALEWSKI et al.,**

            **Plaintiffs,**

            **v.**

**T.P. BUILDERS, INC. et al.,**

            **Defendants.**
_____

**1:10-cv-876
(GLS/RFT)**

## **SUMMARY ORDER**

After issuance of the Second Circuit's Mandate, (Dkt. No. 235), the court ordered defendants T.P. Builders, Inc., and its owner, Thomas Paonessa (collectively "T.P."), and DeRaven Design & Drafting, and its owner, Roxanne K. Heller (collectively "DeRaven"), to articulate their positions with respect to the court's vacated award of attorney's fees, (Dkt. No. 236). T.P. and DeRaven timely submitted their arguments in support of fees, (Dkt Nos. 237, 238), and plaintiffs James E. Zalewski and Draftics, Ltd. filed opposing papers, (Dkt. No. 239). For the reasons set forth below, T.P. and DeRaven's motions for fees, (Dkt. Nos. 196, 197), are denied.

As the Second Circuit noted in its disposition of plaintiffs' appeal, although the court's rationale for awarding attorney's fees to defendants was flawed, "Zalewski's initial conduct [in filing several pleadings] might

warrant an award of attorney's fees under the Copyright Act based on . . . factors [other than objective unreasonableness]." *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 108 (2d Cir. 2014). The Second Circuit also specifically left open the possibility that this court may be able to sufficiently explain why "the first three complaints were so obtuse, abusive, and otherwise different from the Third Amended Complaint that its award [was] justified." *Id.*

T.P. contends that an award of attorney's fees is justified because of plaintiffs' "[m]isconduct [b]efore and [d]uring [l]itigation." (Dkt. No. 237 at 2-4.) Specifically, T.P. argues that plaintiffs acted in bad faith by naming "numerous defendants who they later admitted bore no culpability," seeking excessive damages that totaled millions of dollars, seeking certain harassing discovery, and "submitting manipulated drawings to this [c]ourt in a cross-motion for substantial similarity." (*Id.*) T.P. submits that fees are appropriate because plaintiffs' "[f]irst [t]hree [c]omplaints [w]ere [a]busive and [o]btuse" as well. (*Id.* at 4-7.) The breadth and scope of the original complaint, plaintiffs' attachment of eighty-two exhibits (without any reference thereto in the complaint itself), and, among other things, general disorganization, demonstrate plaintiffs' abusiveness. (*Id.* at 5.) The

2

amended complaint and second amended complaint were only marginally better and suffered from some of the same and other defects that rendered them abusive and obtuse. (*Id.* at 5-6.) DeRaven makes similar arguments and neatly articulates a slew of reasons why an award of attorney's fees is justified, including that plaintiffs made "a knowingly false statement in a sworn declaration about the use of copyrighted drawings in an overlay comparison of drawings" and an equitable argument about the effect on DeRaven if it is forced to bear its own litigation costs. (Dkt. No. 238 at 3-9.) While T.P. merely defends the courts' original award of fees to it, DeRaven requests attorney's fees in an enlarged amount of $78,203, which exceeds its original request by $35,158 and contemplates fees incurred after judgment was entered in its favor.[1] (*Id.* at 9; *compare* Dkt. No. 195, *with* Dkt. No. 238, Attach. 1.)

In opposition, plaintiffs assert that the litigation was at all times prosecuted in good faith, their prior superceded pleadings cannot now be used against them, T.P. and DeRaven have advanced arguments that exceed the scope of the Mandate—in the case of DeRaven by seeking

---

[1] In its current posture, the court declines to consider DeRaven's new fee request. The new request is outside of the scope of issues now before the court.

3

attorney's fees for legal work that post-dates the third amended complaint, and, as to both T.P. and DeRaven, by arguing "matters wholly unrelated to the initial three complaints"—and T.P. and DeRaven have failed to link plaintiffs' alleged bad faith to the incurrence of discrete and specific attorney's fees. (Dkt. No. 239 at 3-10.)

In copyright litigation, attorney's fees may be awarded to prevailing parties in the court's discretion. *See* 17 U.S.C. § 505. In exercising its discretion, a court "may consider: 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Zalewski*, 754 F.3d at 108 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 & n.19 (1994)). While not dispositive, the objective reasonableness of a claim should be accorded "'substantial weight' . . . because 'the imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act.'" *Id.* (quoting *Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 122 (2d Cir. 2001)). As the Second Circuit has explained in the past and reaffirmed in its Mandate, "[m]isconduct before or during litigation can, in appropriate

4

cases, provide the basis for an award of fees." *Matthew Bender*, 240 F.3d at 126. Any fees awarded on the basis of misconduct "should be related to costs or expenses incurred as a direct result of bad faith conduct." *Id.*

Here, upon reexamination, fees are not justified. Indeed, the salient factors, which are not entirely distinct and overlap one another, do not support an award. In a nutshell, the court harbors substantial doubt that plaintiffs' conduct prior to filing their third amended complaint was motivated by bad faith.[2] To be clear, the court was and still is troubled by the first three pleadings. However, the court's concern stems primarily from the fact that plaintiffs dragged scores of unwitting homeowners into the litigation when there was no apparent basis to do so. Indeed, the inclusion of home owners as defendants significantly complicated the litigation from a logistical standpoint for everyone involved in this case. The September 9, 2010 conference before Magistrate Judge Randolph F. Treece, which occurred at a time after the first amended complaint but before the second amended complaint had been filed, serves as but one example of the convoluted nature of the action—both logistically and

---

[2] The court previously dismissed as unsupported arguments that plaintiffs' motivation for commencing the action was misplaced and that the action was frivolous. (Dkt. No. 214 at 5 n.3.) In light of the Mandate, the court has revisited those issues as outlined above, but it reaches the same conclusion.

substantively.  (*See, e.g.*, Dkt. No. 197, Attach. 4 at 6-7.)

Homeowners were named as defendants in the initial and first amended complaint.  (Dkt. Nos. 1, 11.)  By the time plaintiffs filed their second amended complaint, no homeowners were involved in the litigation.  (Dkt. No. 60.)  Even though the homeowners were no longer part of the case as of the filing of the second amended complaint, as the court noted in one of its prior Memorandum-Decision and Orders, that pleading was still "woefully underpled" and was dismissed with leave to amend for a third time.  (Dkt. No. 133 at 12.)  Despite the inability of plaintiffs' former counsel to draft a pleading that passed the facial plausibility standard, the shortcomings of the first three pleadings seem more attributable to counsel's abilities than bad faith by plaintiffs.  The arguments advanced by T.P. and DeRaven[3] speculate about plaintiffs' conduct and the motivation therefor; but those unsupported contentions do not persuade the court.  Even assuming that there was misconduct on the part of plaintiffs, T.P. and

---

[3] For example, T.P. and DeRaven argue that: plaintiffs' original counsel made comments during the earlier-referenced conference with Judge Treece that "sent a clear message . . . and strongly implied that extracting quick settlements . . . would depend 'on how quickly the defendants want to get out of it,'" (Dkt. No. 238 at 4 (quoting Dkt. No. 197, Attach. 4 at 8); counsel made other comments at the same conference, which implied that "[p]laintiffs and their lawyer knew exactly what they were doing in bringing such a convoluted lawsuit," (*id.* at 5); plaintiffs submitted visual overlay drawings as true and accurate comparisons when, in fact, they knew those drawings were altered, (*id.* at 6); and plaintiffs sought to engage in discovery that was not necessary, (Dkt. No. 237 at 4).

6

DeRaven have wholly failed to match the incurrence of particular fees to plaintiffs' conduct. *See Matthew Bender*, 240 F.3d at 126. The court has considered the allegedly abusive and obtuse nature of the first three pleadings as part and parcel of the arguments pertaining to plaintiffs' conduct in the litigation. Again, while the litigation was complicated early on by the inclusion of innocent homeowners and a failure to adequately plead the claims, considering all factors, the court declines to exercise its discretion under section 505.

Accordingly, it is hereby

**ORDERED** that T.P.'s motion for attorney's fees (Dkt. No. 196) is **DENIED**; and it is further

**ORDERED** that DeRaven's motion for attorney's fees (Dkt. No. 197) is **DENIED**; and it is further

**ORDERED** that the Clerk provide a copy of this Summary Order to the parties.

**IT IS SO ORDERED.**

January 5, 2015
Albany, New York

*Gary L. Sharpe*
Chief Judge
U.S. District Court